IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

LUIS LORENZO ARMENTERO,

    Plaintiff,                       No. CIV S-06-1949 FCD DAD P

    vs.

L. SNEAD,                                  <u>ORDER</u>

    Defendant.                 <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

        Plaintiff is a state prisoner proceeding pro se and in forma pauperis with an action filed pursuant to 42 U.S.C. § 1983. On February 8, 2007, defendant Snead filed a motion to dismiss the complaint on the grounds that plaintiff failed to exhaust available administrative remedies prior to bringing this action and that his complaint fails to state a claim upon which relief can be granted. Plaintiff has filed a timely opposition to the motion. Defendant has filed a reply. Plaintiff has also filed an unauthorized response to defendant's reply. See E.D. Local Rule 78-230(m).

**PLAINTIFF'S CLAIMS**

        Plaintiff alleges that on November 17, 2005, he was on the prison yard with his cellmate waiting in line for the television room when a group of white inmates began fighting with several black inmates. (Compl. at 2-3.) Plaintiff alleges that he and his cellmate moved to

1

the shower area, next to the television room. The tower officer ordered everyone in that area to sit down. The group of inmates in the shower area included approximately ten black inmates, two Japanese inmates, four Mexican inmates, a white inmate who was taking a shower at the time, and plaintiff and his cellmate. (Compl. at 3.)

All of the inmates were interviewed by sergeants and lieutenants to determine who was involved in the riot. (Compl. at 4.) After all of the inmates were checked by nurses and a doctor for cuts, swelling, or injuries, all of the inmates went to the canteen area to be interviewed by defendant Snead. (Id.)

Defendant Snead gave the group a short speech and told the inmates that if he called their names, they should stay put. The other inmates could return to their cell. (Compl. at 4.) After defendant Snead called plaintiff's name, plaintiff tried to convince Snead that he had nothing to do with the riot. (Compl. at 4-5.) Plaintiff emphasized that he was classified as a Mexican, so there was no reason for him to be a part of the riot. Plaintiff gave his name and number to Officer Jackson who allegedly told defendant Snead that plaintiff had nothing to do with the riot. Plaintiff alleges that defendant Snead ignored Officer Jackson. (Id.)

Plaintiff also alleges that defendant Snead called the names of the two Japanese inmates. They asked if they could return to their cells and defendant Snead told them they could. One of the Japanese inmates asked Snead whether plaintiff could also go because he is classified as a Cuban, but defendant allegedly said something to the effect of "we will see what we're going to do." (Compl. at 5.) Plaintiff alleges that the group of black inmates also told defendant Snead that plaintiff is Cuban and had nothing to do with the riot, but defendant Snead ignored them. (Compl. at 5-6.)

Plaintiff alleges that on November 18, 2005, he was placed in administrative segregation pending an investigation pursuant to an order by defendant Snead. On November 22, 2005, plaintiff met with the Investigative Services Unit and the Institution Classification Committee. The Committee released plaintiff from administrative segregation after finding that

1  he had no personal involvement in the riot.  (Compl. at 6.)  However, plaintiff did not leave
2  administrative segregation until November 25, 2005 because there were no empty cells in general
3  population with a bottom bunk, which he needs to accommodate his back problem.  (Pl.'s Opp'n
4  to Def's. Mot. to Dismiss at 1; Compl. at 9.)  Plaintiff concludes that through his conduct
5  defendant Snead violated plaintiff's rights as guaranteed under the Fourteenth Amendment Due
6  Process and Equal Protection Clauses.

### DEFENDANT'S MOTION TO DISMISS

I.  Defendant's Motion

Defendant argues that plaintiff's complaint should be dismissed because: (1) plaintiff failed to exhaust his available administrative remedies with respect to his claims against defendant Snead; (2) plaintiff fails to state a claim upon which relief can be granted, as he has no protected liberty interest in remaining free from administrative segregation; (3) even if plaintiff has a protected liberty interest, he received all of the process he was due; and (4) plaintiff's claim of discrimination is not supported by the alleged facts.  (Def's. Mot. to Dismiss at 3.)  In support of the motion, defendant Snead has submitted declarations by Tracy Hudgins, an Appeals Coordinator at CSP-Folsom and N. Grannis, Chief of Inmate Appeals at the California Department of Corrections and Rehabilitation.

First, defendant maintains that plaintiff has failed to exhaust his administrative remedies.  Defendant acknowledges that plaintiff filed a grievance against him alleging:

> [O]n 11/17/05, white and black inmates were fighting on the yard, after the riot you released all white, black, other, and mexican inmates that were not involved at the riot.  According your speculation, Why did you put me in C.T.Q., also on lockdown in Administrative Segregation Unit, if I am an inmate classified as Mexican who have nothing to do with the riot?

(Def's. Mot. to Dismiss at 5.)  In his grievance plaintiff requested that defendant Snead exercise his authority to change the ethnicity designation on plaintiff's identification card from "Mexican" to "Other" to accurately reflect his Cuban ethnicity.

On January 3, 2006, defendant Snead responded, noting that he lacked authority to change plaintiff's ethnicity designation. Snead also advised plaintiff that he had been placed in administrative segregation so that his involvement with the riot could be investigated. (Def's. Mot. to Dismiss at 5.)

On January 12, 2006, plaintiff appealed to the first formal level of review, claiming that defendant, as a lieutenant, should have known which group plaintiff associates with and how plaintiff was classified. (Def's. Mot. to Dismiss at 5.) On February 16, 2006, plaintiff received a response from the first level of review. The Appeals Office partially granted his appeal. (Decl. Grannis at 2 & Attach. C.) Plaintiff was sent a memorandum, explaining that the ethnicity designation on his identification card had been changed from "Mexican" to "Other." (Def's. Mot. to Dismiss at 5; Decl. Hudgins at 2 & Attach. A.)

On March 1, 2006, plaintiff submitted his appeal to the second level of review. On March 14, 2006, the Appeals Coordinator rejected plaintiff's complaint because he failed to adequately complete section "F" of the appeal form. (Decl. Hudgins at 2 & Attach. A; Decl. Grannis at 2 & Attach. C.) The Appeals Coordinator explained the reason for the rejection and asked plaintiff to complete section "F" and resubmit the appeal. Plaintiff did not resubmit his appeal. (Decl. Hudgins at 2.) Instead, he forwarded his appeal to the director's level. (Def's. Mot. to Dismiss at 5; Decl. Grannis at 2.) On May 7, 2006, N. Grannis, Chief of Inmate Appeals Branch, rejected plaintiff's appeal because he had not completed the second level of review. (Def's. Mot. to Dismiss at 6; Decl. Grannis at 2.) Plaintiff received Grannis' letter on May 15, 2006. (Decl. Grannis, Attach. D.) Plaintiff filed this lawsuit on August 31, 2006.

Based upon the history of plaintiff's administrative grievances set forth above, defendant concludes that plaintiff failed to properly exhaust his administrative remedies. In this regard, defendant emphasizes that "[p]roper exhaustion demands compliance with an agency's deadlines and other procedural rules. . . ." (Def's. Mot. to Dismiss at 7) (citing Woodford v. Ngo, ___U.S.___, 126 S. Ct. 2378, 2386 (2006)).

4

Second, defendant argues that plaintiff fails to state a claim upon which relief can be granted. (Def's. Mot. to Dismiss at 8.) In this regard, defendant contends that placing plaintiff in administrative segregation for seven days does not violate the Fourteenth Amendment Due Process Clause. Defendant argues that, for plaintiff to state a cognizable cause of action for deprivation of procedural due process, he must first establish that he has a liberty interest at stake. Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." (Def's. Mot. to Dismiss at 8-9.) Defendant contends that plaintiff's seven-day confinement in administrative segregation does not amount to an atypical and significant hardship.

Relying on the decision in Hewitt v. Helms, 459 U.S. 460, 468 (1983), defendant explains that placement of "an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." Confinement "pending completion of the investigation of disciplinary charges against [an inmate] is not based on an inquiry requiring any elaborate procedural safeguards." (Def's. Mot. to Dismiss at 9.)

Defendant also relies on the decision in Cato v. Rushen, 824 F.2d 703 (9th Cir. 1987), where the court did not find it unconstitutional for an inmate to be placed in administrative segregation for almost a month before a hearing could be conducted to determine his complicity in acts leading to his confinement. "The court reasoned that the confinement was acceptable because 'the prison atmosphere is highly charged, and prison officials must be able to act swiftly on the basis of little information to avert dangerous situations.'" (Def's. Mot. to Dismiss at 9) (quoting Cato, 824 F. 2d at 705).

Defendant argues that, in this case, plaintiff admitted he was in the area of the riot. In addition, prison officials provided him with written notice that staff members saw him in the riot area. Prison officials also gave him a hearing within four days, and plaintiff was released three days later. Defendant concludes that plaintiff's stay in administrative segregation did not

implicate a liberty interest as is necessary to state a due process claim. (Def's. Mot. to Dismiss at 9.)

Third, defendant argues that, even if plaintiff had a liberty interest at stake, the only due process required is that prison officials hold an informal non-adversary hearing within a reasonable time, inform the prisoner of the charges against him, and allow the prisoner to present his views. (Def's. Mot. to Dismiss at 10.) Defendant contends that, here, plaintiff had sufficient notice for the reasons underlying his placement in administrative segregation. In addition, plaintiff participated in a hearing within four days of being placed in administrative segregation. At the hearing, prison officials determined that plaintiff was not involved in the riot and authorized his return to the general population. (Def's. Mot. to Dismiss at 10.) Defendant concludes that plaintiff received all of the process that he was due.

Finally, defendant argues that the facts alleged do not support an Equal Protection Clause claim. Defendant contends that "Equal protection rights are violated when: (1) a person is a member of an identifiable class; (2) that person is intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment." (Def's. Mot. to Dismiss at 11) (citing Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)).

Here, plaintiff's complaint alleges that a riot occurred between black and white inmates. Following the riot, all potential participants were confined in their quarters or placed in administrative segregation pending an investigation. Defendant argues that plaintiff's placement in administrative segregation had more to do with the fact that he was in the area of the riot than his race. All other prisoners that were not involved in the riot were released, no matter their race. Only inmates suspected of being involved in the incident, including plaintiff, were placed in administrative segregation. (Def's. Mot. to Dismiss at 11.)

II. Plaintiff's Opposition

Plaintiff argues that he properly exhausted his grievance at every level of review. He explains, that on January 3, 2006, defendant Snead rejected his informal complaint claiming

1  that he did not have the authority to correct the ethnicity on his identification card.  Defendant
2  Snead told him he needed to see a counselor.  Defendant Snead also informed him that he was
3  placed in administrative segregation pending investigation of his involvement with the riot.  (Pl.'s
4  Intro. to Opp'n to Def's. Mot. to Dismiss at 2.)
5             On January 12, 2006, plaintiff filed a complaint at the first formal level of review
6  because he was dissatisfied with defendant Snead's response.  Plaintiff claimed that defendant
7  Snead should have inquired and checked his record to know who he was and which group of
8  inmates he was affiliated with before placing him in administrative segregation.  Plaintiff claimed
9  that defendant Snead, as a lieutenant, should have known how he was classified.  (Pl.'s Intro. to
10 Opp'n to Def's. Mot. to Dismiss at 2.)
11            On February 16, 2006, at the first level of review, plaintiff's appeal partially
12 granted and his ethnicity designation was changed to "Other."  (Pl.'s Intro. to Opp'n to Def's.
13 Mot. to Dismiss at 2-3.)  Plaintiff contends that "because [he] could not request monetary
14 damages he full filled [sic] the exhaustion requirement to all levels of review required by (PLRA)
15 before bringing this suit to this federal court."  (Pl.'s Opp'n to Def's. Mot. to Dismiss at 2.)
16 Citing the Supreme Court's decision in <u>Booth v. Churner</u>, 532 U.S. 731, 741 (2001), plaintiff
17 acknowledges that exhaustion is no longer left to the discretion of the district court and is
18 mandatory.  Plaintiff also concedes that prisoners must now exhaust all available remedies even
19 where the relief sought cannot be granted by the administrative process.   (Pl.'s Opp'n to Def's.
20 Mot. to Dismiss at 1.)  Plaintiff concludes, however, that he properly and fully exhausted his
21 complaint throughout every level of review, and therefore, his complaint is properly before this
22 court. (Pl.'s Opp'n to Def's. Mot. to Dismiss at 2.)
23            Plaintiff also argues that he states a colorable claim under the Fourteenth
24 Amendment Due Process and Equal Protection Clauses. (Pl.'s Opp'n to Def's. Mot. to Dismiss at
25 3.) Plaintiff argues that defendant Snead's actions caused him to lose his lower bunk assignment,
26 which in turn, aggravated his medical condition.  Plaintiff notes that § 1983 requires that there be

1 an actual connection between the defendant's actions and the deprivations he has suffered. (Pl.'s
2 Opp'n to Def's. Mot. to Dismiss at 5.) Plaintiff concludes that because he has linked defendant
3 Snead to deprivations of his rights, he has stated a colorable claim.

III. Defendant's Reply

In reply, defendant reiterates that plaintiff's appeal was returned to him with a request that he clarify what relief he sought from his appeal. Plaintiff failed to follow this directive and instead attempted to bypass the second level of review by forwarding his appeal to the director's level. Defendant contends that, under the holding in Woodford v. Ngo, __ U.S. __, 126 S. Ct. 2378 (2006), plaintiff did not properly exhaust his administrative remedies because he failed to comply with CDCR's administrative appeals procedure. (Defs.' Reply at 3.)

Defendant also reiterates that plaintiff fails to state a claim upon which relief can be granted because he has no protected liberty interest in remaining free from administrative segregation under the facts alleged in his complaint. In addition, if plaintiff did have a liberty interest in remaining free from administrative segregation, he received all the process he was due. Finally, defendant reiterates his argument that plaintiff's claim of discrimination is not supported by the facts alleged. (Defs.' Reply at 3-4.)

IV. Legal Standards Applicable to a Motion to Dismiss Pursuant to Non-Enumerated Rule 12(b)

By the Prison Litigation Reform Act of 1995 (PLRA), Congress amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

The Supreme Court has ruled that exhaustion of prison administrative procedures is mandated regardless of the relief offered through such procedures. Booth v. Churner, 532 U.S.

8

731, 741 (2001). The Court has also cautioned against reading futility or other exceptions into the statutory exhaustion requirement. Id. at 741 n.6. Because proper exhaustion is necessary, a prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. Woodford v. Ngo, __ U.S. __, 126 S. Ct. 2378, 2382 (2006).

In California, prisoners may appeal "any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). Most appeals progress from an informal review through three formal levels of review. See Cal. Code Regs. tit. 15, § 3084.5. A decision at the third formal level, also referred to as the director's level, is not appealable and will conclude a prisoner's administrative remedy. Cal. Code Regs. tit. 15, §§ 3084.1(a) and 3084.5(e)(2). Thus, a prisoner in California is required to submit an inmate appeal at the appropriate level and proceed to the highest level of review available before filing suit. Butler v. Adams, 397 F.3d 1181, 1183 (9th Cir. 2005); Bennett v. King, 293 F.3d 1096, 1098 (9th Cir. 2002).

The PLRA exhaustion requirement is not jurisdictional but rather creates an affirmative defense that a defendant may raise in a non-enumerated Rule 12(b) motion. Jones v. Bock, __U.S. __, __, 127 S. Ct. 910, 921 (2007) ("[I]nmates are not required to specially plead or demonstrate exhaustion in their complaints."); Wyatt v. Terhune, 315 F.3d 1108, 1117-19 & nn.9 & 13 (9th Cir.), cert. denied sub nom. Alameida v. Wyatt, 540 U.S. 810 (2003). The defendant bears the burden of raising and proving the absence of exhaustion. Wyatt, 315 F.3d at 1119. "In deciding a motion to dismiss for a failure to exhaust nonjudicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." Id. at 1119-20. "I[f] the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust–a procedure closely analogous to summary judgment–then the court must assure that [the

/////

/////

1 prisoner] has fair notice of his opportunity to develop a record."¹  Id. at 1120 n.14.  When the

2 district court concludes that the prisoner has not exhausted administrative remedies on a claim,

3 "the proper remedy is dismissal of the claim without prejudice."  Id. at 1120.  See also Lira v.

4 Herrera, 427 F.3d 1164, 1170 (9th Cir. 2005), cert. denied, ___U.S.___, 127 S. Ct. 1212 (2007).

5 On the other hand, "if a complaint contains both good and bad claims, the court proceeds with the

6 good and leaves the bad."  Jones, 127 S. Ct. at 924.

7 V.  Discussion

8       In the present case, the court finds that plaintiff failed to properly exhaust his

9 administrative remedies.  The Prison Litigation Reform Act requires a prisoner to properly

10 exhaust his administrative remedies as long as the administrative authorities can take some action

11 in response to the complaint.  See Woodford v. Ngo, __ U.S. __, 126 S. Ct. 2378, 2382 (2006);

12 Booth, 532 U.S. at 733-34; see also Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) ("The

13 obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.").

14       In Woodford, California prison officials placed a state prisoner in administrative

15 segregation for allegedly engaging in "inappropriate activity" in the prison chapel.  Woodford,

16 126 S. Ct. at 2383.  The prisoner filed a grievance, but prison officials rejected it as untimely

17 because he failed to file it within 15 working days of the action being challenged.  The prisoner

18 appealed the decision internally without success and subsequently brought a Section 1983 action.

19 Id. at 2383-84.  The Supreme Court held that the PLRA requires proper exhaustion and explained

20 that a prisoner does not satisfy the exhaustion requirement by filing an untimely or otherwise

21 procedurally defective appeal.  Id. at 2382.  In this regard, the Supreme Court reasoned that

22 administrative exhaustion serves two primary purposes.  Id. at 2385.  First, exhaustion protects

23 administrative agency authority by allowing an agency the opportunity to correct its own mistakes.

24 Id.  Second, exhaustion promotes efficiency and may produce a useful record for a subsequent

---

¹ Plaintiff was notified of the requirements for opposing a motion to dismiss brought pursuant to non-enumerated Rule 12(b) on December 6, 2006.  (Order filed Dec. 6, 2006 at 3-4.)

court case. Id. The Court noted that requiring proper exhaustion "gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." Id. at 2388-89. The Court concluded that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 2386.

In the present case, plaintiff failed to properly exhaust his administrative grievance. Although plaintiff exhausted his appeal through the informal and first formal levels of review, plaintiff failed to exhaust his appeal through the second and director levels of review. In his second level appeal, plaintiff wrote:

> You placed me on ASU for discrimination and improper procedure, you put my life in danger with other inmates, you made me lose my metal bunk adequate for my arthritis and back problems, you failed to inquiry about my ethnicity before you put me in CTQ also in ASU.

(Pl.'s Opp'n to Def's. Mot. to Dismiss, Ex. A.)

The Appeals Coordinator screened plaintiff's appeal and rejected it as incomplete. The screening form utilized includes a number of standard options that the Appeals Coordinator can check, indicating why an appeal is being rejected. (Def's. Mot. to Dismiss, Grannis Decl. at Attach. C.) In plaintiff's case, the Appeals Coordinator checked the section stating: "You have not adequately completed the Inmate/Parolee Form (CDC 602). . . ." (Id.) In particular, the Appeals Coordinator informed plaintiff "[y]ou have failed to complete Section F completely." (Id.) The Appeals Coordinator asked plaintiff "[w]hat are you requesting?" and told plaintiff to "[b]e very specific about why the 1st level response dissatisfies you." (Id.)[2]

---

[2] In plaintiff's unauthorized opposition to defendant's Reply, he argues that the Appeals Coordinator improperly screened out his grievance. Plaintiff claims that none of the rejection criteria included in Section 3084.3(c) apply to his appeal. Plaintiff's argument is unpersuasive. Section 3084.3(c)(5) states an appeal may be rejected because "The appeal is incomplete or necessary supporting documents are not attached." Cal. Code Regs. tit. 15, § 3084.5(c)(5).

1    Rather than completing Section F and clarifying his request for relief, plaintiff
2  appealed to the director's level of review.  The director's level of review similarly screened and
3  rejected his appeal stating:

> This office provides the Director's Level Review of inmate/parolee
> appeals.  The form must be completed through the Second Level of
> Review on behalf of the Warden or Parole Region Administrator.
> Your appeal was rejected, withdrawn or cancelled.  If you disagree
> with that decision, contact the Appeals Coordinator.  You must
> comply with instructions from that office.

8  (Def's. Mot. to Dismiss, Grannis Decl. at Attach. D.)  Plaintiff never returned to the second level
9  of review or contacted the Appeals Coordinator.  (Decl. Hudgins at 2.)  Instead, plaintiff filed this
10 lawsuit.
11   By filing a lawsuit before completing the grievance process, plaintiff failed to
12 exhaust his available administrative remedies - a prerequisite to filing this action.  As the Court in
13 Woodford explained:

> The benefits of exhaustion can be realized only if the prison
> grievance system is given a fair opportunity to consider the
> grievance.  The prison grievance system will not have such an
> opportunity unless the grievant complies with the system's critical
> procedural rules.  A prisoner who does not want to participate in
> the prison grievance system will have little incentive to comply
> with the systems procedural rules unless noncompliance carries a
> sanction . . . .

19 Woodford, 126 S. Ct. at 2388.
20   The court also rejects plaintiff's contention that he "exhausted his action properly
21 on every level of review where his complaint was partially granted at the [f]irst level and because
22 CDCR could not grant him monetary relief."  (Pl.'s Opp'n to Def's. Mot. to Dismiss at 1.)
23 Plaintiff correctly acknowledges that the holding in Booth v. Churner applies in this case.  In
24 Booth, the plaintiff claimed that correction officers violated his Eighth Amendment right to be
25 free from cruel and unusual punishment by using excessive force against him.  Booth sought
26 injunctive relief, including transfer to another prison, and monetary relief.  Booth acknowledged

that the prison's grievance process could address his excessive force complaints, but he maintained that it could not provide the monetary relief he requested.  Id. at 734.  The Supreme Court first noted that the PLRA states "[n]o action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted."  Id. at 736.  The Court explained that administrative remedies are not available if the relevant administrative officials lack the authority to provide any relief or to take any action in response to a prisoner's complaint.  However, the Court rejected Booth's argument that administrative remedies are not available if the administrative officials have the authority to take some action in response to the complaint but not the action the prisoner demands.  The Court explained that "an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues" and "regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible."  Id. at 739 & 741 n.6.

       In the present case, the Appeals Coordinator granted plaintiff's first level appeal in part.  Prison officials changed the ethnicity designation on his identification card from "Mexican" to "Other."  However, the Appeals Coordinator denied plaintiff relief with respect to his core claim that defendant Snead improperly placing him in administrative segregation.  In this regard, the Appeals Coordinator wrote:

> The CDC-114D dated November 18, 2005 was reviewed.  It clearly documents your presence in the area of the RIOT that occurred between Black and White inmates on the FSP Main Yard.  You were placed in ASU pending investigation into your involvement in the riot.  All due process rights were observed, the investigation concluded you were not involved in the riot, and you were released to the general population at your Initial ASU Placement Hearing.  Lieutenant Snead's actions were consistent with his responsibility to insure the Safety and Security of the Institution.
>
>                 \*\*\*
>
> Due to the above information, this appeal is partially granted.  You [sic] ethnicity was corrected to reflect "Other" on 2-10-06.

/////

/////

>The appellant is advised that this issue may be submitted for second
>level review.

(Def's. Mot. to Dismiss, Grannis Decl. at Attach. C.)

Thus, although plaintiff's appeal was partially granted at the first level of review, plaintiff had not received all of the relief he had requested. Where there continues to exist the "possibility of some relief for the action complained of," a prisoner is required to pursue his administrative appeals to the highest level. Booth, 532 U.S. at 739.

Even if the administrative grievance process could not grant plaintiff the monetary relief he allegedly sought, plaintiff was still required to properly exhaust his administrative appeals. As the Booth Court explained, so long as administrative remedies are "available," meaning the relevant administrative officials have the authority to take some action, prisoners are required to pursue their appeals through the director's level, irrespective of the relief sought and offered. Booth, 532 U.S. at 741. In this case, prison officials at both the second level of appeal and the director's level had the authority to take some action in response to plaintiff's complaint of discrimination.

As noted above, the defendant has the burden to raise and prove the affirmative defense of failure to exhaust administrative remedies. See Jones, 127 S. Ct. at 921; Wyatt, 315 F.3d at 1119 & n.13. Defendant Snead has carried his burden in this instance. Given the circumstances set forth above, the court finds that plaintiff failed to properly exhaust his claim against defendant Snead. Therefore, the defendant's motion to dismiss should be granted.[3]

/////

/////

---

[3] Defendant also argues that: (1) plaintiff fails to state a cognizable due process claim; (2) alternatively, plaintiff received all of the process he was due; and (3) plaintiff's discrimination claim is not supported by the facts alleged. While these arguments appear to be well-taken, the court declines to address them in light of the recommendation set forth herein that the action be dismissed due to plaintiff's failure to exhaust administrative remedies.

**OTHER MOTIONS PENDING BEFORE THE COURT**

Plaintiff has requested an evidentiary hearing and has filed a motion for appointment of counsel. In light of the findings and recommendations herein, plaintiff's request and motion will be denied as unnecessary.

Defendant Snead has requested that the court stay discovery and allow him to respond to plaintiff's discovery requests within 45 days of the court's ruling on the pending motion to dismiss. In the alternative, defendant requests that the court grant him an additional 45 days to respond to plaintiff's discovery requests if the court denies his motion for stay. Plaintiff has filed an opposition. In light of the findings and recommendations herein, defendant's amended motion to stay discovery will be granted in part, and defendant will be relieved of the obligation to respond to plaintiff's discovery requests absent further order of the court.

**CONCLUSION**

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's March 6, 2007 request for an evidentiary hearing is denied;

2. Plaintiff's March 6, 2007 motion for appointment of counsel is denied; and

3. Defendant's April 2, 2007 amended motion to stay discovery is granted in part. Defendant is relieved of the obligation to respond to plaintiff's discovery requests absent further order of the court.

IT IS HEREBY RECOMMENDED that defendant Snead's February 8, 2007 motion to dismiss be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised

that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 6, 2007.

> _Dale A. Drozd_
> DALE A. DROZD
> UNITED STATES MAGISTRATE JUDGE

DAD:9
arme1949.57